**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

                                                                         **Hon. Hugh B. Scott**

                                                                          **07CR00245S**

                            v.                                              **Report &**
                                                                           **Recommendation**

**MONAE DAVIS et al.,**
              **Defendants.**

Before the Court are omnibus motions filed by the defendants seeking various relief: John A. Lee (Docket No. 131 and 132); Matthew Johnson (Docket No. 134); Kevin L. Glowacki (Docket No. 135); David J. Thompson (Docket No. 139); Leroy W. Nupp, Jr. (Docket No. 140); Mark L. Burdick (Docket No. 142 and 147); Jennifer Gourley (Docket No. 143); Jimi Lin Gourley (Docket No. 144); Andrea Perkins (Docket No. 146); Shawn Johnson (Docket No. 148); Monae Davis (Docket No. 151); Mark W. Decker (Docket No. 152 and 156); Richard D. Farnham, Sr. (Docket No. 154, 155 and 157); Corey Rivers (Docket No. 169 and 172); Lori A. Carrow (Docket No. 170); Scott Peters (Docket No. 171 and 173); Beth L. Saifakas (Docket No. 174); and Barrett Johnson (Docket No. 179).

**Discussion**

The above named defendants, along with Raheim Howell, Anna M. Benjamin, and Ryan Potter,[1] were charged in a two count indictment dated October 9, 2007. Count 1 of the indictment charges each of the defendants with conspiring to possess and distribute 500 grams or more of a substance containing cocaine; and to manufacture, possess and distribute 50 grams or more of a substance containing cocaine base, in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(B), 841(b)(1)(A) and 846.

The defendants seek to suppress all evidence obtained as a result of electronic surveillance in this case.[2] In addition, defendant Jennifer Gourley seeks suppression of evidence and statements obtained as a result of a stop/search on June 1, 2007, and questioning on June 5, 2007.

**Electronic Surveillance**

The defendants argue that the government failed to establish the necessity of electronic surveillance in this case. Defendant Saifakas and Jennifer Gourley also argue that the government failed to establish probable cause in support of the wiretap applications. Finally, defendant Jennifer Gourley asserts that the government failed to properly minimize the recorded conversations. The government does not challenge the defendants standing to make such arguments.

---

[1] The docket does not reflect that pretrial motions have been filed on behalf of these individual defendants.

[2] To the extent the instant motions seek various discovery requests, the motions are the subject of a separate Decision & Order.

Necessity

The defendants argue that the government failed to establish the necessity of the wiretap warrants.  The defendant suggests that the affidavit of Cattaraugus County Deputy Sherriff Corry Higgins reflects that he had been able to "consensually record" some conversations and that the law enforcement agents did not make sufficient attempts to contact confidential sources who had refused continued cooperation prior to seeking the wiretap warrants.  (Docket No. 131 at ¶¶ 62-63, 67).

In this regard, the defendant relies principally on United States v Lilla,  699  F.2d  99  (2d Cir. 1983).  It should be noted that Lilla  has been distinguished at least three times by the Second Circuit itself and by at least two District Courts in this Circuit. United States v. Torres, 901 F.2d 205  (2d Cir.), cert. denied sub nom. Cruz v. United States, 498 U.S. 906 (1990); United States v. Puglisi, 790 F.2d 240 (2d Cir. 1986); United States v. Ruggerio, 726 F.2d 913 (2d Cir.), cert. denied sub nom. Rabito v. United States, 469 U.S. 831 (1984); United States v. Blount, 30 F. Supp.2d 308 (D. Conn. 1998); and United States v  Crozzoli, 698 F. Supp. 430 (E.D.N.Y. 1988).

An application for electronic surveillance must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(3)(c). Although these requirements control the use of such intrusive measures, they "were not intended to turn electronic surveillance into a tool of last resort." United States v. Valdez, 1991 WL

3

41590, *2 (S.D.N.Y. 1991), aff'd, 952 F.2d 394 (2d Cir. 1991).   Further, these requirements are to be construed in a "common sense and realistic fashion." Ruggiero, 726 F.2d at 924.  As the Second Circuit has repeatedly made clear:

> The purpose of the[se] statutory requirements is not to preclude the use of electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents;  rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods.

Torres, 901 F.2d at 231.

In assessing whether the government has satisfied this burden,  the Second Circuit has warned that the averments alleged  in  connection with the use of normal  investigative techniques are not to be reviewed *de novo*.  Torres, 901 F.2d at 231.  The role of the reviewing Court instead is simply to "decide if the facts set forth in the application were minimally adequate to support the determination that was made." Torres, 901 F.2d at 231; see Ruggiero, 726 F.2d at 924 (use of certain normal investigative techniques-- such as search warrants, grand juries or interviews--unnecessary where such techniques would publicize  the  investigation" and "perhaps jeopardize the investigation itself"); United States v. Villegas, 1993 WL 535013 (S.D.N.Y. 1993); United States v. Miranda, 1993 WL 410507 at *2-3 (S.D.N.Y. 1993)  (court's initial "determination that normal investigative techniques would not suffice is entitled to substantial deference.").

Finally, the Court  has deemed wiretapping "particularly appropriate" where, as here, "the telephone is routinely relied on to conduct the criminal enterprise under investigation," United States v. Young, 822 F.2d 1234, 1237 (2d Cir. 1987).  Indeed, in the context of narcotics

conspiracies, the Court "has held that the government meets its burden by submitting a wiretap application supported by an affidavit describing how traditional investigative techniques had failed to provide more than 'a limited picture' of [the] narcotics organization." Valdez, at *2 (quoting Torres, 901 F.2d at 232).

Particularly in light of the deferential standard to be applied, the defendants' assertion that the government failed to meet the necessity requirement must fail.

The defendant's motion to suppress the evidence obtained by electronic surveillance on the grounds that the government failed to demonstrate the necessity of electronic eavesdropping should be denied.

Probable Cause

Defendants Saifakas and Jennifer Gourley assert, in a conclusory manner, that the government failed to establish probable cause for the issuance of the initial wiretap warrant. (Docket No. 143 at page 9; Docket No. 174 at ¶80).

The test for determining probable cause under the federal wiretap statute is the same as the test for determining probable cause for a search warrant. United States v. Diaz, 176 F.3d 52,110 (2d Cir. 1999). Thus, the "totality of the circumstances" test articulated by the Supreme Court in Illinois v. Gates, 462 U.S. 213 (1983), applies. Under that test, the issuing court must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that ... evidence of a crime will be found...." Id. at 238; see Diaz, 176 F.3d at 110. Furthermore, the evidence must be viewed and weighed "as

understood by those versed in the field of law enforcement." Gates, 462 U.S. at 232.

Finally, "[a] reviewing court must accord substantial deference to the finding of an issuing

judicial officer that probable cause exists." United States v. Wagner, 989 F.2d 69, 72 (2d

Cir.1993); United States v. Gotti, 42 F.Supp.2d 252, 261 (S.D.N.Y.1999). "Any doubts as to the

existence of probable cause should be resolved in favor of upholding the authorization." United

States v. Ambrosio, 898 F.Supp. 177, 181 (S.D.N.Y.1995) (citing Gates, 462 U.S. at 237 n. 10).

The defendants present no specific arguments as to how the warrant applications were

insufficient to establish probable cause.  The warrant application in this case was supported by

the affidavit of Cattaraugus County Deputy Sherriff Corry Higgins (Docket No. 131-2).  The 36-

page Higgins Affidavit identifies the various individuals and agencies involved in the

investigation (Docket No. 131-2 at ¶5); sets forth significant detail regarding the background of

the investigation (Docket No. 131-2 at ¶¶10-13); describes the information obtained from

confidential sources, including excerpts of consensually recorded conversations (Docket No.

131-2 at ¶¶ 14-22). Among other things, the warrant application provided information that a

confidential source ("CS-1") claimed Davis was selling "kilogram to multi-kilogram" quantities

of cocaine and crack cocaine in Buffalo, that Davis asked CS-1 to assist in converting cocaine

into crack cocaine, (Docket No. 131-2 at ¶ 10); that a December 14, 2006 search warrant

executed at 316 Iroquois Drive in Salamanca, New York (the residence of Davis' brother)

revealed six ounces of cocaine (Docket No. 131-2 at ¶ 11-13); that another confidential source

("SC-2") stated that he/she had been dealing with Davis for more than a year and that he/she had

made numerous drug purchases from Davis at 272 Woltz Avenue in Buffalo (Docket No. 131-2

at ¶ 15-16); that CS-2 made a controlled purchase of crack cocaine from Davis on February 15,

2007 (Docket No. 131-2 at ¶ 17-20); that on February 28, 2007, Davis called CS-2 and inquired whether the CS-2 wanted to purchase a kilogram of cocaine (Docket No. 131-2 at ¶ 21); that on March 1, 2007, CS-2 consensually recorded a conversation with Davis regarding the purchase of cocaine (Docket No. 131-2 at ¶ 21).  The Higgins Affidavit also sets forth the past investigation efforts and the necessity for electronic surveillance to identify and provide evidence of then unknown persons who were involved with the supply and purchase of cocaine and crack cocaine with Davis. (Docket No. 131-2 at ¶ 23-43).    The Higgins Affidavit establishes probable cause for the issuance of the wiretap warrants in this case.

Minimization

It is the Government's burden to make a prima facie showing of compliance with the minimization requirements.  See, United States v. Rizzo, 491 F.2d 215, 2117 n.7 (2d Cir.), cert. denied, 416 U.S. 990 (1974); United States v. Baker, 443 F. Supp. 526, 531 (S.D.N.Y. 1977). Once a prima facie showing is made, the burden shifts to the defendant to show that, despite good faith compliance with the minimization requirements, "substantial unreasonable interception of non-pertinent conversations occurred." United States v. Ianiello, 621 F. Supp 1455, 1470 (S.D.N.Y.), aff'd, 809 F.2d 184 (1985).  In the instant case, however, defendant Jennifer Peters asserted a failure to minimize the recording of legitimate conversations in only a cursory manner (Docket No. 143 at page 9). No argument or authority was presented as to the minimization argument. It is unclear from the record in this case, as to whether the defendants were in possession of sufficient information (progress notes, minimization instructions and line

sheets)[3] regarding the minimization efforts.

It is recommended that the defendant's motion regarding minimization be denied without prejudice, with leave to assert such a motion, if appropriate, upon review of the materials to be produced by the government.

**Defendant Gourley's Motion to Suppress Statements**
**Relating to June 1, 2007 and June 5, 2007 Stop/Search/Questioning**

Defendant Jennifer Gourley has also moved to suppress evidence obtained as a result of a stop and search on June 1, 2007 and further questioning by the police on June 5, 2007. (Docket No. 143 at pages 3-9). During oral argument with respect to the instant motion, the government represented that those incidents related to a separate state court arrest. Further, the government represented that it is not aware that any evidence obtained as a result of the June 1, 2007 and June 5, 2007 incidents was relevant to the instant matter. Thus, based upon the government's representations that none of the evidence obtained during the June 1, 2007 and June 5, 2007 incidents would be used against Gourley in this prosecution, the motion to suppress is moot. Thus, it is recommended that the motion to suppress the evidence obtained during the June 1, 2007 and June 5, 2007 incidents be denied as moot.

---

[3] The Court directed that this information, if not already disclosed, be produced to the defendants in a separate Decision & Order resolving the defendants' respective discovery requests.

**Conclusion**

It is recommended that the respective motions to suppress evidence be denied for the reasons stated above.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

                                                          /s/ Hugh B. Scott
                                          United States Magistrate Judge
                                          Western District of New York

Buffalo, New York
July 24, 2008